IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,          §
                                   §
                    Plaintiff,     §
                                   §   Civil Action No. 3:05-CV-2147-D
VS.                                §
                                   §
CORNERSTONE WEALTH                 §
CORPORATION, INC., et al.,         §
                                   §
                    Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action seeking monetary civil penalties, consumer

redress, and injunctive and other relief under the Federal Trade

Commission Act ("FTCA") and the Credit Repair Organizations Act

("CROA") for violations of CROA, plaintiff United States of America

("the government") moves for summary judgment. The court concludes

that the government has established its entitlement to summary

judgment as to some, but not all, of its claims, and it therefore

grants in part and denies in part the government's motion.

I

Defendant John R. Atchley, Jr. ("Atchley") is the President of

defendant Cornerstone Wealth Corporation, Inc. ("Cornerstone"), a

credit repair company.[1]  In 1998 the government, acting on behalf

---

[1]The court would normally recount the facts in favor of
Atchley and Cornerstone as the summary judgment nonmovants. *See,
e.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d
698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v.
Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).  Because defendants have
not filed a response brief and the court does not have defendants'
version of the facts, the court will set forth only the undisputed

of the Federal Trade Commission, sued Cornerstone and Atchley, alleging that they were violating CROA. On December 4, 1998 the court entered a stipulated consent order for permanent injunction ("1998 Order"). The 1998 Order mandated that Atchley and Cornerstone (collectively, "Cornerstone") abide by CROA, and it specifically permanently enjoined Cornerstone from "charging or receiving any money or other valuable consideration for the performance of any service which the Defendants have agreed to perform . . . before such service has been fully performed." P. App. 5.

In November 2005 the government filed a contempt motion alleging that Cornerstone had violated the 1998 Order by performing work prior to the expiration of the statutorily-prescribed three-day waiting period and by charging and receiving payment before it had fully performed agreed services. Following an evidentiary hearing, the court found that Cornerstone had violated CROA, and it held Cornerstone in civil contempt of the 1998 Order. In pertinent part, the court ordered that Cornerstone "immediately cease and desist charging or receiving any money or other valuable consideration from consumers for credit repair services that have not been fully performed." *United States v. Cornerstone Wealth Corp., Inc.*, 2006 WL 522124, at *10 (N.D. Tex. Mar. 3, 2006) (Fitzwater, J.) ("*Cornerstone I*"). The court also imposed a daily

---

facts as recounted in the government's brief.

fine in case of noncompliance, and it ordered Cornerstone to remove the existing "guarantee" section from its contract with its customers.[2] *Id.*

The government filed the instant lawsuit simultaneously with the contempt motion in the 1998 case, alleging that Cornerstone had violated § 404(b) of CROA, 15 U.S.C. § 1679b(b), and § 5(a) of the FTCA, 15 U.S.C. § 45(a)[3], by charging or receiving money or other valuable consideration for the performance of services that Cornerstone had agreed to perform for consumers before such services were fully performed. It seeks monetary civil penalties pursuant to 15 U.S.C. § 45(m)(1)(A), consumer redress under 15 U.S.C. § 57b, and an injunction, under 15 U.S.C. § 53(b), permanently enjoining Cornerstone from further violations of CROA and FTCA. The government moves for summary judgment on all its claims. Cornerstone has requested several extensions of the deadline to respond to the government's motion, but it has not filed a response.

---

[2]Before March 2006, Cornerstone's customer service contract included a two-year "guarantee" under which Cornerstone agreed to send dispute letters for up to two years at the customer's request. Cornerstone charged and received partial, and sometimes full, payment for these services during initial meetings when customers signed contracts, prior to Cornerstone's services being fully performed.

[3]Pursuant to § 410(b)(i) of CROA, 15 U.S.C. § 1679h(b)(i), any violation of any requirement or prohibition imposed under this subchapter with respect to credit repair organizations constitutes an unfair or deceptive practice in commerce, in violation of § 5(a) of the FTCA, 15 U.S.C. § 45(a).

## II

As a preliminary matter, the court must address Cornerstone's multiple motions requesting an extension of time to respond to the government's summary judgment motion.

### A

The government filed its motion for summary judgment on May 21, 2007. Cornerstone's response to this motion was due on June 11, 2007, the Monday following the twentieth day after the motion was filed. *See* N.D. Tex. Civ. R. 7.1(e); Fed. R. Civ. P. 6(a). On June 14, 2007 Cornerstone filed an unopposed motion for an extension of time to file its response brief, seeking to extend the deadline until July 2, 2007. On July 2, 2007 Cornerstone did not file its response; instead, it filed an amended motion for an extension of time, seeking to extend the response deadline until July 16, 2007 on the basis that "several witnesses are out of town on vacation." Ds. Am. Mot. Ext. of Time 1. Cornerstone filed on July 16, 2007 a second amended motion for an extension of time, seeking to extend the response deadline until August 16, 2007. It again asserted as justification for the extension that several witnesses were out of town on vacation. As of today, Cornerstone still has not responsed to the government's motion.

Rule 56(f) provides that

> [s]hould it appear from the affidavits of a
> party opposing the motion [for summary
> judgment] that the party cannot for reasons
> stated present by affidavit facts essential to
> justify the party's opposition, the court may
> . . . order a continuance to permit affidavits
> to be obtained or depositions to be taken or
> discovery to be had or may make such other
> order as is just.

"The Rule is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions." *Parakkavetty v. Indus Int'l, Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.) (citing *Owens v. Estate of Erwin*, 968 F. Supp. 320, 322 (N.D. Tex. 1997) (Fitzwater, J.)). "The continuance authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely." *Id.* (citing *Union City Barge Line Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987)). "To comply with the Rule, the party opposing summary judgment must file the specified non-evidentiary affidavit, explaining why he cannot oppose the summary judgment motion on the merits." *Id.* "The party may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but must instead identify a genuine issue of material fact that justifies the continuance pending further discovery." *Id.* (citations omitted). "A party seeking a continuance of a motion

for summary judgment must demonstrate why he needs additional discovery and how the additional discovery will create a genuine issue of material fact." *Id.* (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).

C

The court concludes that Cornerstone has not met its burden under Rule 56(f), and it denies Cornerstone's July 2, 2007 amended motion for an extension of time and its July 16, 2007 second amended motion for an extension of time. Cornerstone maintains that several of the witnesses it intends to rely on to support its response are out of town on vacation and it cannot now properly prepare and support its response. But Cornerstone has submitted no affidavit in support of its motion, it does not point to any specific witness whose testimony is required before it can respond, and it has not met its burden of demonstrating why it needs this additional evidence or how the evidence will create a genuine issue of material fact. *See Parakkavetty*, 2004 WL 354317, at *1.

Because its first motion for an extension was unopposed, Cornerstone could reasonably have assumed that the deadline for filing a response was extended to July 2, 2007. But it did not meet the July 2 deadline, and it now seeks to extend the response date more than two months beyond the original deadline, without providing a sufficient justification for, or affidavit in support of, such an extension. Cornerstone cannot obtain an extension of

the due date simply by filing a motion seeking one.

Because it has not met the standard articulated in Rule 56(f), the court denies Cornerstone's motions and addresses, below, the government's motion for summary judgment without considering a response from Cornerstone.[4]

### III

The government moves for summary judgment on its claim alleging violations of CROA and FTCA. It requests that the court order Cornerstone to pay a civil penalty, and that the court permanently enjoin Cornerstone from engaging in the business of "credit repair."

Because the government bears the burden of proof on this claim, to obtain summary judgment it must establish "'beyond peradventure all of the essential elements of the claim.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that it must demonstrate, without genuine and material factual dispute, and as a matter of law, that Cornerstone violated CROA and FTCA by charging or receiving money or other valuable consideration for the

---

[4]Indeed, although not controlling, it is worth noting that Cornerstone's conduct with respect to this motion is similar to the delaying conduct in which it and its counsel has engaged in the 1998 case: vaguely-based, and sometimes questionable, requests to continue deadlines intended to promote the final adjudication of the matter in dispute.

performance of services before Cornerstone fully performed the services.

IV

The court first addresses whether Cornerstone violated § 1679b(b) by continuing to withdraw or receive money from existing customers who were making installment payments under "guarantee" contracts that were signed before the court rendered its contempt decision in *Cornerstone I*.

Before the court decided *Cornerstone I* in March 2006, Cornerstone's customer service contract[5] included a two-

---

[5]CROA requires that all credit repair organizations execute a written contract with their customers that contains:

> (1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;
> (2) a full and detailed description of the services to be performed by the credit repair organization for the consumer, including—
>> (A) all guarantees of performance; and
>> (B) an estimate of—
>>> (i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or
>>> (ii) the length of the period necessary to perform such services;
> (3) the credit repair organization's name and principal business address; and
> (4) a conspicuous statement in bold

year "guarantee" under which Cornerstone agreed, at the customer's request, to send dispute letters to credit bureaus for up to two years. Cornerstone charged and received partial, and sometimes full, payment for these services during initial meetings in which customers signed contracts. This occurred before Cornerstone had fully performed its services. In *Cornerstone I* the court found that through the "guarantee," Cornerstone charged for services before they had been fully performed, in violation of § 1679b(b). The court ordered Cornerstone to "immediately cease and desist charging or receiving any money or other valuable consideration from consumers for credit repair services that have not been fully performed." *Cornerstone I*, 2006 WL 522124, at *7, *10.

Cornerstone has admitted that it continues to take monthly installment payments from pre-existing customers' bank accounts, even though these customers' two-year agreements have yet to expire. Cornerstone appears to posit that the court's decision in *Cornerstone I* did not address accepting or requesting payments from

---

                     face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

15 U.S.C. § 1679d(b).

customers who had contracted with Cornerstone before the date of the ruling, and that its continued acceptance of payments under the old "guarantee" contracts does not violate § 1679b(b).

The government correctly argues that Cornerstone's position makes no sense. It points out that the court did not make any exceptions allowing illegal payments from any category of customers, and that the court, instead, set out in detail why Cornerstone's services under the guarantee section of its contract constituted services for purposes of CROA. The government argues that customers who signed the "guarantee" version of Cornerstone's contract reasonably believed they were purchasing two years of potential services from Cornerstone. This is because, under the contract, at any time during the two year "guarantee" period, customers have the right to request that Cornerstone send additional dispute letters relating to new or recurring items on their credit reports. The government reasons that because Cornerstone agreed in advance to perform those services, any payment by a customer covered under the old contract, prior to the expiration of the promised two years, constitutes payment in advance of full performance, and therefore violates CROA.

The court concludes that the government has established beyond peradventure that Cornerstone has violated § 1679b(b) by continuing to withdraw or receive payments from customers under the prior "guarantee" contract. The court has already determined that the

"guarantee" is "unquestionably a service under CROA," and that by including the two-year "guarantee" in its contract, "Cornerstone representatives lead clients to believe they are purchasing credit repair services for a substantial period of time, up to a maximum of two years." *Cornerstone I*, 2006 WL 522124, at *7.

The government has also established beyond peradventure that Cornerstone continues to take monthly installment payments from the bank accounts of customers who signed the "guarantee" contract. The court concludes that if there is unexpired time remaining on a customer's "guarantee" contract, and Cornerstone continues to accept payment from the customer, Cornerstone is continuing to accept payment for services not yet rendered, thereby violating CROA. Regarding customers who signed the "guarantee" contract, Cornerstone is contractually obligated to provide a "service" at any time during the remaining portion of the two-year "guarantee period" by "re-verify[ing] a client's credit information until inaccurate or obsolete information is resolved on the credit report." *Id*. at *6. Thus the customer's payment under the contract constitutes a payment for services not yet rendered, in violation of CROA.

V

The court next considers whether the government has established beyond peradventure that Cornerstone has violated CROA by charging and receiving money or other valuable consideration

from new customers who signed the revised contract that Cornerstone adopted in response to the court's decision in *Cornerstone I*.

The government contends that, under CROA, Cornerstone cannot legally perform work prior to the third day after a contract with a customer is signed, and if Cornerstone accepts any valuable consideration on the day the contract is signed, it violates the law. The government argues that Cornerstone continues to seek and receive payment for its services up front, during the initial customer meeting. It cites evidence that Cornerstone regularly accepts payment in the form of customer checks provided during initial meetings at its offices, well before Cornerstone begins performing any services. The government acknowledges that Cornerstone urges that the checks are post-dated, and it notes that Cornerstone will likely argue that it does not deposit the checks for several days. The government responds by citing Tex. Bus. & Com. Code Ann. § 4.401 (Vernon 2002), which provides that a post-dated check may be cashed regardless of the date written on it, unless the payor takes special steps to alert the bank of the post-dating. The government also argues that customer checks are worth the full face value regardless of the date, and, accordingly, they constitute "money or other valuable consideration" that Cornerstone receives in advance of fully performing its services. The government also adduces evidence that Cornerstone customers who

choose to pay by credit or debit card give Cornerstone representatives their credit/debit card information during the initial meeting. Cornerstone ostensibly does not immediately process the payment, and it waits several days until the work is performed. The government argues that regardless when Cornerstone actually processes the credit/debit card payments, customers give Cornerstone valuable consideration up front by providing all the information necessary for Cornerstone to immediately charge their credit cards or withdraw money from their bank accounts. It maintains that the payment information is undeniably worth something, regardless of when Cornerstone chooses to make the withdrawal or charge the account, and that customers who give Cornerstone their credit or debit card information do not simply agree to provide consideration at a future date, but instead afford Cornerstone the means necessary to charge or debit funds whenever it so chooses, which constitutes valuable consideration.

B

Under 15 U.S.C. § 1679b(b), "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." The government's evidence establishes beyond peradventure that during the initial meeting with the customer, Cornerstone accepts checks and obtains the credit/debit card

- 13 -

information necessary to process a credit/debit card charge from a customer. The court held in *Cornerstone I* that § 1679b(a)(2) prohibits Cornerstone from providing any services to a customer until three business days have elapsed after the contract is signed. Accordingly, if Cornerstone "charge[s] or receive[s] any money or other valuable consideration for the performance of any service" on the same day the contract is signed, it necessarily receives money or consideration for its services before the service is fully performed, because Cornerstone is legally prohibited from providing services until three days after the contract is signed. Accordingly, in deciding the government's summary judgment motion, the court must determine whether Cornerstone "charged or received" "money or other valuable consideration" when Cornerstone's customers provided post-dated checks or credit/debit card information during their initial meetings with Cornerstone.

C

Having considered the government's arguments, and drawing all inferences in favor of Cornerstone as the summary judgment nonmovant, the court concludes that Cornerstone violated CROA by receiving consideration through accepting post-dated checks from customers during its initial meetings with them.

Under Texas law, a check is an unconditional promise to pay a fixed amount of money. *See* Tex. Bus. & Com. Code Ann. § 3.104 (Vernon 2002). When a customer provides a signed check that is

payable to the order of Cornerstone, Cornerstone receives consideration in the amount specified on the check. Even if Cornerstone could establish, as it apparently intends to argue, that all customer checks that it receives are post-dated, this does not change the court's conclusion that the checks constitute consideration in the amount for which they were written on the day the customer signed and gave the check to Cornerstone. Tex. Bus. & Com. Code Ann. § 4.401(c) provides: "[a] bank may charge against the account of a customer a check that is otherwise properly payable from the account, *even though payment was made before the date of the check*, unless the customer has given notice to the bank of the postdating describing the check with reasonable certainty." *Id.* (emphasis added). There is no summary judgment evidence that any Cornerstone customer provided the required notice to the customer's bank.

CROA prohibits a credit repair organization from receiving "any money or other valuable consideration" before it fully performs a service. Under Texas law, a signed check, even if post-dated, constitutes "valuable consideration," as the term is used in CROA. When interpreting statutes, "[t]he court is required to read the statute as a whole to ascertain the meaning of the language in the context of the desired goals that Congress envisioned." *United States v. Herrera*, 29 F.Supp.2d 756, 759 (N.D. Tex. 1998) (Fitzwater, J.) (citing *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443,

448 (5th Cir. 1995)). "Absent a clearly expressed legislative intention to the contrary, the language of the statute itself is to be regarded as conclusive . . . [and] [w]here the terms of the statute are unambiguous, judicial inquiry is complete." *Id.* (citations omitted).

The stated purpose of CROA is to protect consumers from unfair or deceptive business practices by credit repair organizations and to ensure that consumers are able to make informed decisions regarding the purchase of services from these organizations. 15 U.S.C. § 1679(b). Congress has attempted to protect consumers by requiring signed contracts that comply with the guidelines of CROA and by prohibiting credit repair organizations from providing services before the end of the three-business-day period that begins on the date the contract is signed. *See* 15 U.S.C. 1679d; *Cornerstone I*, 2006 WL 522124, at *3. Section 1679b(b) provides another method of protection, requiring that services be performed before the credit repair organization is permitted to charge the customer or accept payment from the customer for the services. This provision, along with the three-day waiting period, ensures that a consumer will have the chance to cancel a contract with the credit repair organization if he changes his mind after signing the contract.[6]

_____

[6]Section 1679d provides for this by requiring the following language to be included in the contract: "You may cancel this contract without penalty or obligation at any time before midnight

- 16 -

To achieve its purpose, § 1679b(b) clearly prohibits credit repair organizations from charging or accepting "money" from their customers the day a contract is signed. The court cannot discern any reason why Congress would have wanted to exclude checks from the scope of "money or other valuable consideration." Accordingly, in Texas, or in another state that has adopted the statutory provisions found in Tex. Bus. & Com. Code Ann. §§ 3.104 and 4.401,[7] the fact that Cornerstone may wait to deposit the check or to present it for payment is immaterial in determining whether it received "valuable consideration" on the day the contract was signed. Even if Cornerstone waited a substantial period of time before depositing or presenting the check, this would not alter the conclusion that the check constituted "money or other valuable consideration" that Cornerstone received days before it was legally permitted to begin performing services under the contract. Accordingly, the court grants summary judgment on the government's claim that Cornerstone violated § 1679b(b) by accepting checks from a customer on the day the customer signed the contract.

---

of the 3rd business day after the date on which you signed the contract." 15 U.S.C. 1679d(b)(4).

[7]The court's decision in this case is predicated on the legal effect of §§ 3.104 and 4.401 of the Texas Business and Commerce Code. The court's reasoning extends to any state that has adopted similar statutory provisions. Because § 4.401, for example, mirrors § 4-401 of the Uniform Commercial Code ("UCC"), the court's reasoning would apply to the many states that have adopted § 4-401 of the UCC.

D

The court next considers whether the government has established beyond peradventure that in collecting customers' credit/debit card information on the day the customer signed the contract, Cornerstone has violated CROA.

1

The court begins by determining whether the government has established beyond peradventure that Cornerstone's practice of collecting customers' credit/debit card information constitutes a "charge." The government adduces evidence that a Cornerstone customer, Claudia Mayberry ("Mayberry"), "was to pay $500 for Cornerstone services," and that Mayberry provided her debit card to Cornerstone before leaving the initial meeting. P. App. 142. It also relies on the contract that Diane Isom and her husband (the "Isoms") signed, under which they "were to pay $300 initially and $100 per month for 20 months." *Id.* at 157. The government maintains that the Isoms provided Cornerstone a debit card to make the first payment before leaving the initial meeting, and that "Diane Isom thought that the money was to be withdrawn from her checking account immediately, and only learned later that Cornerstone processed the payment a few weeks after the meeting." P. Br. 9. Finally, the government points to William Klug, who "was to pay $300 for Cornerstone's services," and who provided his credit card to Cornerstone before leaving the initial meeting. P.

App. 169.

"'When a statute does not define its terms, [courts] employ the ordinary meaning of the words.'" *Bear Stearns Cos. v. Lavalle*, 2000 WL 34339773, at *6 (N.D. Tex. Oct. 27, 2000) (Fitzwater, J.) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999)). In the context of § 1679b(b), the ordinary meaning of the word "charge" is "to demand a fee" or "to bill," BLACK'S LAW DICTIONARY 248 (8th Ed. 2004), and could refer to Cornerstone's demanding payment from its customers or billing its customers' credit/debit card companies. If Cornerstone requires a customer to provide credit/debit card information before it begins work on the person's account, this could in fact constitute charging money or other valuable consideration before work was performed. But the court is unable to determine from the summary judgment record whether this is what Cornerstone does.

The government relies on evidence that various customers were "to pay" a certain amount under their contracts, but from the government's proof, the court cannot determine beyond peradventure that Cornerstone "charged" these customers. It would not appear to violate CROA for a client, perhaps as a matter of convenience, to voluntarily provide credit/debit card information to Cornerstone during the first meeting in preparation for later payment using the information provided. Cornerstone's mere acceptance of *voluntarily-provided* debit/credit card information would not

necessarily constitute a charge.[8]   Because the government's

evidence is inconclusive as to the details of the meetings with the

various clients, the court cannot conclude beyond peradventure

that—by collecting debit/credit card information—Cornerstone has

"charged" clients for services before it performed them.

2

The court also concludes that the government has failed to

establish beyond peradventure that Cornerstone "received" "money or

other valuable consideration" when it recorded customer

credit/debit card information during the initial meeting.

Cornerstone's current service contract agreement ("SCA") provides

that the client

> agree[s] to pay, or begin to pay, [the amount
> due for Cornerstone's services] only after
> Cornerstone has fully performed all the
> services in this Section.   And Cornerstone
> agrees to only charge and accept payment from
> the Client after it has fully performed all
> the services set forth in this Section.

P. App. 190.   The court is unable to discern from the government's

evidence whether Cornerstone gathered customer credit/debit card

information on the understanding or agreement that a charge would

---

[8]The court emphasizes that the information must be *voluntarily*
provided in order for this statement to hold true.   Cornerstone has
a history of engaging in contemptible conduct that clearly violates
federal law, and asserting plainly unreasonable positions for the
apparent purpose of avoiding the clear dictates of CROA.   The
court's reasoning cannot be used to support a subterfuge for
avoiding  § 1679b(b)'s prohibition against charging a customer
before the services have been fully performed.

occur immediately, or whether it was understood, in accordance with the terms of the SCA, that no charge would be processed until after all covered services were fully performed.  If Cornerstone merely received credit/debit card information[9] and lacked any right or authority to charge the credit/debit card before all covered services had been fully performed, obtaining the credit/debit card information might not constitute receipt of "money or other valuable consideration."  Until Cornerstone had fully performed a covered service, it would have no right under the SCA to charge the credit/debit card for the service.  Receipt of the customer's credit/debit card number could in such circumstances amount to nothing more than preparation for the receipt of money to be paid later.  The government's evidence does not establish beyond peradventure that customers authorized Cornerstone to charge their credit/debit accounts before the covered services were fully performed.[10]  Because there is a genuine issue of material fact, the court denies the government's motion for summary judgment in this

---

[9]The information must, of course, be voluntarily-provided to avoid the statutory prohibition against *charging* for services before they are fully performed.  The court is addressing here, however, CROA's prohibition against *receiving* a fee before services are fully performed.

[10]The court does not suggest that it would be permissible under CROA for Cornerstone and its customers to enter into oral contracts for the provision of credit repair services or to modify orally the payment terms of the SCA to enable Cornerstone to charge customer debit/credit cards before covered services were fully performed.  This would violate § 1679d(b)'s requirement that "the terms and conditions of payment" be contained in the written contract.

respect.[11]

VI

The court holds that the government is entitled to partial summary judgment on its claim alleging a violation of 15 U.S.C. § 1679b based on Cornerstone's acceptance of payment from customers who signed the old "guarantee" contract. The government is also entitled to partial summary judgment on its claim that Cornerstone accepted checks——including post-dated checks——from its customers on the day the contracts were signed. The court is unable to determine the civil penalties and other damages the government is entitled to under the FTCA because the court has not yet determined whether Cornerstone's acceptance of credit card information amounted to a violation of § 1679b(b). Accordingly, although the court grants partial summary judgment on the question of liability, it leaves the determination of damages and further injunctive relief for later adjudication.

---

[11]To the extent the government seeks summary judgment on the basis that Cornerstone violated CROA by making untrue or misleading statements to credit bureaus regarding customers' credit histories, the court denies the motion because the government has not pleaded a claim under 15 U.S.C. § 1679b(a). The allegations of its complaint only address alleged violations of 15 U.S.C. § 1679b(b). Although the government is not obligated in the complaint to cite § 1679b(a), the government has failed to plead facts that provide Cornerstone fair notice that it is being sued for violating that provision of the statute.

*     *     *

For the foregoing reasons, the court grants in part and denies in part the government's May 21, 2007 motion for summary judgment.

**SO ORDERED.**

August 16, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE